NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
ALLISON REESE
Nevada Bar Number 13977
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: allison.reese@usdoj.gov
*Attorneys for the United States of America*

FILED

2019 MAY 17 AM 11: 22

U.S. MAGISTRATE JUDGE

BY_____

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GERARDO JAVIER ZARATE, and<br>GRISELDA NEGRETE ZARATE,<br><br>Defendants. | COMPLAINT<br><br>Case No.:   2:19-mj-00362-NJK<br><br>VIOLATIONS:<br><br>21 U.S.C. § 846, 841(a)(1) and (b)(1)(A)(viii) – Conspiracy to Distribute a Controlled Substance<br><br>21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) – Possession of a Controlled Substance with Intent to Distribute<br><br>21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) – Distribution of a Controlled Substance |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being duly sworn, deposes and states:

**COUNT ONE**
(Conspiracy to Distribute a Controlled Substance)

Beginning from a time unknown, and continuing to on or about May 16, 2019, in the State and Federal District of Nevada,

1

**Gerardo Javier ZARATE, and
Griselda NEGRETE ZARATE,**

defendants herein, did knowingly and intentionally conspire to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), (b)(1)(A)(viii).

## COUNT TWO
(Possession of a Controlled Substance with Intent to Distribute)

On or about May 16, 2019, in the State and Federal District of Nevada,

**Gerardo Javier ZARATE,**

defendant herein, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

## COUNT THREE
(Distribution of a Controlled Substance)

On or about May 7, 2019, in the State and Federal District of Nevada,

**Griselda NEGRETE ZARATE,**

defendant herein, did knowingly and intentionally distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii).

Complainant, Joseph Krieg, as a Special Agent with the Internal Revenue Service, detailed to the Drug Enforcement Administration (DEA) as a Task Force Agent, states the following as and for probable cause:

1.      I am a Special Agent (SA) with the Internal Revenue Service - Criminal Investigation (IRS-CI), and have been employed in this capacity since 2008. Prior to 2008, I was an Internal Revenue Agent (RA) with the IRS from September 2002 to 2008. As an IRS-RA, I conducted audits of Small Businesses and Self-Employed Individuals and Flow-Through Entities, such as Partnerships and S Corporations.

2.      Since joining the Criminal Investigation Division, I have received extensive training in financial investigative techniques at the Federal Law Enforcement Training Center located in Glynco, Georgia. My responsibilities include the investigation of criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the money laundering statutes (Title 18, United States Code, Sections 1956 and 1957), and related offenses. My training includes a thorough groundwork in search/seizure warrants, constitutional law, tax law, and many other law enforcement topics. I earned a Bachelor of Science degree in Accountancy from Northern Arizona University in December 1999.

3.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in, *inter alia*, the Controlled Substances Act. I am currently assigned to the Las Vegas, Nevada (NV), District Office, Enforcement Group 2 of the Drug Enforcement Agency as a Task Force Agent.

4.      I have received training in investigations involving the interception of wire communications, and complex conspiracy cases involving drug trafficking. Since March 2018, I have investigated and assisted on numerous drug cases ranging in scope from street level distributors to multi-state and national, complex conspiracy cases. Based on my training and

experience as an IRS-CI agent and a DEA Task Force Agent, I am familiar with the manner in which narcotics traffickers conduct their drug-related businesses including: the methods employed by dealers to import and distribute narcotics, their use of telephones in furtherance of their illegal activities and their use of coded language to refer to narcotics, drug proceeds, counter-surveillance and other aspects of narcotics trafficking. My training and experience have involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking; (2) surveillance; (3) analysis of documentary and physical evidence; (4) the hand-to-hand purchase of controlled substances; and (5) the execution of search warrants.

5. The following information contained within this criminal complaint was obtained and observed by me or provided to me by other law enforcement personnel. All times are approximate.

6. On April 29, 2019, under the direction and control of DEA LVDO Enforcement Group 2, a confidential source (CS) met with an unknown male later identified by the CS and surveillance as Gerardo Javier ZARATE. Agents directed and monitored the CS, who placed phone calls with ZARATE at telephone number 702-274-9215. These phone calls were recorded. During the phone calls, the CS and ZARATE agreed to meet in the parking lot of Mariana's Supermarket located at 2325 E. Cheyenne Ave, Las Vegas, NV later on that same day. The purpose of the meeting was to negotiate the price for the purchase of about one pound of crystal methamphetamine for the following day.

7. Surveillance was established at the above mentioned parking lot. The CS and his/her vehicle were searched both before and after the meeting with ZARATE for illegal drugs, weapons, proceeds, etc. with negative results. Shortly after the CS arrived, surveillance observed a silver Nissan pickup truck, with temporary tag NW788794, arrive and park near the CS. Surveillance observed the

CS walk to the driver's side window of the Nissan and have a conversation with the driver. During this meeting, ZARATE stated that he received his methamphetamine from an unknown source of supply for about $1,800.00 in U.S. currency (USC) per pound and was going to sell it to the CS for about $2,000.00 in USC per pound. ZARATE gave the CS a small sample of crystal methamphetamine as well as a small sample of cocaine and stated that whatever the CS needed in regard to cocaine or methamphetamine that ZARATE could provide the CS with it. After the meeting, the CS and ZARATE in the silver Nissan pickup truck left the parking lot. The contents of this conversation were audio recorded.

8. After the meeting at the parking lot of Mariana's Supermarket, agents met with the CS, who provided them with the cocaine and crystal methamphetamine samples. Both samples were submitted to a presumptive field test later that same day with a positive hit for the presence of cocaine and methamphetamine respectively.

9. Surveillance subsequently followed the silver Nissan Pickup truck to the intersection of Paseo Recallo Court and Avenida Vaquero where surveillance lost visual contact with ZARATE (less than .1 mile from ZARATE's residence and the premise later identified and located at 5413 Avenida Vaquero, Las Vegas, NV 89108). The following morning, an agent found the silver pickup used by ZARATE parked in front of 5413 Avenida Vaquero, Las Vegas, NV. Electric utilities were later requested via an administrative subpoena to Nevada Energy, which indicated that the service was in ZARATE's name. The CS later identified ZARATE from a driver's license photo obtained as the individual who he/she met with at Mariana's Supermarket located at 2325 E. Cheyenne Ave, Las Vegas, NV.

10. On April 30, 2019, under the direction and control of DEA LVDO Enforcement Group 2, the CS again met with ZARATE in the parking lot of the Mariana's Supermarket located at 2325 E. Cheyenne Ave, Las Vegas, NV. The purpose was for the purchase of about one pound of crystal

methamphetamine for $2,000.00 in U.S. currency (USC). The CS and his/her vehicle were searched both before and after the meeting with ZARATE for illegal drugs, weapons, proceeds, etc. with negative results. The CS had been communicating with ZARATE via phone number 702-274-9215 to coordinate this meeting in the presence of agents. These phone calls were also recorded. Surveillance was also established at Mariana's Supermarket located at 2325 E. Cheyenne Ave, Las Vegas, NV as well as at 5413 Avenida Vaquero, Las Vegas, NV.

11. After the recorded phone calls were made, surveillance later observed ZARATE walk from his house at 5413 Avenida Vaquero, carrying what appeared to be a light colored object, later identified as a small tissue box. Surveillance then observed ZARATE enter the silver Nissan pickup truck (NW788794) and depart the residence.

12. Surveillance observed the silver Nissan pickup (NW788794) drive straight to the Mariana's Supermarket parking lot and park. Surveillance then observed the CS approach and enter the passenger side of the silver Nissan pickup (NW788794). During the meeting, ZARATE gave the CS a tissue box containing the suspected crystal methamphetamine (513.2 gross grams) in exchange for $1,875.00 in USC provided to him by the CS. It should be noted that ZARATE previously advised the CS that this package was going to be about one ounce short of a full pound, hence the reduced price of the purchase of this suspected methamphetamine. ZARATE then requested that the CS continue to purchase methamphetamine from ZARATE. ZARATE further stated that he gets the methamphetamine from unknown sources in California and Arizona. The contents of this meeting were recorded (audio and visual).

13. During this meeting, surveillance was close enough to observe what appeared to be ZARATE pass a light colored object to the CS. Shortly after, surveillance also observed ZARATE lean forward and place what appeared to be something in his left rear pant pocket. The CS then exited ZARATE's vehicle and departed. Surveillance then followed ZARATE directly back to his residence.

14. Controlling agents met with the CS right after the meeting and retrieved a light colored tissue box that concealed about one pound of crystal methamphetamine. Agents conducted a presumptive field test on this package with a positive result for the presence of methamphetamine.

15. On May 7, 2019, under the direction and control of DEA LVDO Enforcement Group 2 the CS had been communicating with whom he/she thought was ZARATE via text messages from phone number 702-274-9215 to coordinate this meeting in the presence of agents. This was for the purpose of purchasing about one pound of crystal methamphetamine for $2,000.00 in USC later that same day. The CS and his/her vehicle were searched both before and after the meeting for illegal drugs, weapons, proceeds, etc. with negative results. Earlier on that same morning, an agent conducted an address check at 5413 Avenida Vaquero, Las Vegas, NV. During the address check, the agent observed a Maroon SUV, the silver Nissan pickup truck, and a white Nissan sedan NV license plate 7D5J02 parked in front of the residence.

16. Surveillance was established in the Mariana's Supermarket parking lot and surveillance observed the CS arrive and park in the Mariana's parking lot and park. Surveillance was also established at 5413 Avenida Vaquero, Las Vegas, NV. Surveillance also observed a Maroon Honda pilot, the silver Nissan pickup truck, and the white Nissan sedan (7D5J02-NV) parked in front of the residence. Surveillance later observed a female wearing a teal shirt and curly dark hair walk from the house and depart in the white Nissan sedan (7D5J02-NV).

17. Upon arriving at the above mentioned parking lot and waiting for a period of time, the CS made a phone call to phone number 702-274-9215 and was surprised to be speaking with an unknown female who stated that she was already there. Upon looking for the female, the CS observed this female standing by a white vehicle with NV license plate 7D5J02 waiving at him/her. Surveillance also observed this female with curly hair and a teal in color blouse wave to the CS, who got into her vehicle. The female stated that ZARATE was not there and would return on or about Thursday, May

9, 2019. ZARATE had asked this female to do this delivery for him, but only if she was willing. The female agreed because it was close to her residence. The female showed the CS the approximate pound of methamphetamine (496.7 gross grams) upon which the CS provided the unknown female the $2,000.00 in U.S. currency (USC). The CS asked for at least two pounds of crystal methamphetamine for the upcoming week and the female stated that the CS should be able to get whatever he/she asked for. Both parties separated after that. The contents of this meeting were recorded for audio and video.

18. Surveillance followed the white Nissan sedan (7D5J02-NV) straight back and park in the driveway of 5413 Avenida Vaquero, Las Vegas, NV. Surveillance observed the female wearing the teal colored shirt with dark curly hair, exit the driver's side of the white Nissan sedan (7D5J02), and walk towards the front door of the residence (5413 Avenida Vaquero, Las Vegas, NV) out of view.

19. After the meeting at the parking lot of Mariana's Supermarket, controlling agents retrieved from the CS a clear zip-lock bag, containing a white crystal like substance resembling methamphetamine. Agents then conducted a presumptive field test on this suspected methamphetamine with a positive result for the presence of methamphetamine. CS later identified NEGRETE ZARATE from a driver's license photo obtained and a social media photo as the individual who he/she met with at Mariana's Supermarket located at 2325 E. Cheyenne Ave, Las Vegas, NV.

20. On May 15, 2019, a federal search warrant was signed by U.S. Magistrate Nancy J. Koppe (2:19-mj-00353-NJK) approving the execution of a search warrant at 5413 Avenida Vaquero, Las Vegas, NV.

21. On May 16, 2019, under the direction and control of DEA LVDO Enforcement Group 2 the CS spoke with ZARATE over phone number 702-274-9215 to coordinate the delivery of another pound of crystal methamphetamine in the presence of agents. The phone calls were recorded.

22. Agents and task force officers set up surveillance at 5413 Avenida Vaquero, Las Vegas, NV in anticipation of arresting ZARATE and NEGRETE ZARATE, and executing the above mentioned search warrant. Several minutes passed, and ZARATE was observed getting into the grey Nissan pickup previously mentioned and depart. Surveillance followed ZARATE, but lost him for a period of time. Interdiction officers assisting with this operation later located ZARATE driving north on I-15 and observed several traffic violations. Officers followed ZARATE until he arrived at the Mariana's Supermarket parking lot previously mentioned. Troopers turned on their police lights and stopped ZARATE. Officers requested ZARATE to exit the vehicle at which point they advised ZARATE of the traffic violations. Officers asked ZARATE if he had any weapons on him and later he consented to a search of his person. Upon raising his hands for the search, officers observed a large mass in his groin area. A trooper, while searching ZARATE, felt that area and heard a crunch sound upon applying pressure. Officers subsequently retrieved from ZARATE's groin area a clear plastic bag containing a white crystalline substance consistent with the characteristics of crystal methamphetamine (171.2 gross grams). A presumptive field test was conducted by agents, which gave a positive result for the presence of methamphetamine. A trooper subsequently ran his K-9 on the grey Nissan pickup and the dog hit on the driver's side door. Upon searching that area, officers found a white crystalline substance in two ziplock bags (344.2 gross grams). A presumptive field test was conducted by agents, which gave a positive result for the presence of methamphetamine. Officers also found a black fabric pouch containing several smaller ziplock baggies containing a white powdery substance consistent with the characteristics of cocaine (102.2 gross grams). A presumptive field test was conducted by agents, which gave a positive result for the presence of cocaine. ZARATE was subsequently arrested.

23. Around the same time that ZARATE was arrested, officers still near the house located at 5413 Avenida Vaquero, observed NEGRETE ZARATE depart in another vehicle. Surveillance

9

followed her for a short period of time and subsequently pulled her over and arrested her. Both ZARATE and NEGRETE ZARATE were transported back to 5413 Avenida Vaquero subsequent to the initial entry into the residence by law enforcement. This was executed without incident. During the search of the residence, participating law enforcement found several small plastic ziplock baggies consistent with the distribution of smaller amounts of narcotics, a pistol, an undetermined amount of U.S. currency (USC) believed to be drug proceeds, miscellaneous bags and jars containing a white powder substance with the characteristics of cocaine (877.7 gross grams), and more miscellaneous baggies containing an assortment of suspected illegal drugs (47.1 gross grams) in NEGRETE ZARATE and ZARATE's bedroom,. Once the search was completed, a copy of the warrant and receipt of the items seized were left at the residence with family member(s).

24. While the search was being executed, an agent read both ZARATE and NEGRETE ZARATE their Miranda warnings, both of whom acknowledged that they understood their rights. ZARATE subsequently stated to an agent that the illegal drugs were obtained by him from an Angel LNU, and that he was making a delivery of the illegal drugs in Angel LNU's behalf.

25. Based on my training and experience and the foregoing complaint, I believe there is probable cause to believe that Gerardo Javier ZARATE and Griselda NEGRETE ZARATE

///

violated Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii), Possession of a Controlled Substance with Intent to Distribute (Methamphetamine) as well Title 21, United States Code, Section 846, Conspiracy to Distribute (Methamphetamine).

_____
Joseph Krieg, Special Agent
Internal Revenue Service – Criminal Investigation
Drug Enforcement Administration – Task Force Agent

SUBSCRIBED and SWORN to before me
This 17th day of May, 2019.

_____
HONORABLE NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE